# Third District Court of Appeal

## State of Florida

Opinion filed November 15, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-32
Lower Tribunal No. 07-45267
_____

**Philip Morris USA Inc.,**
Appellant,

vs.

**Odaima Garcia, etc., et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Reemberto Diaz, Judge.

Shook, Hardy & Bacon, LLP, and Scott A. Chesin (New York, N.Y.); and Arnold & Porter Kaye Scholer LLP, and Geoffrey J. Michael, Frank Cruz-Alvarez and Rachel Lyons Forman (Washington, D.C.), for appellant.

Burlington & Rockenbach, P.A., and Bard D. Rockenbach and Jeffrey V. Mansell (West Palm Beach); Parafinczuk Wolf, and Justin Parafinczuk (Boca Raton); and Menendez Trial Attorneys, and Jose Menendez, for appellees.

Before SCALES, HENDON, and MILLER, JJ.

HENDON, J.

Philip Morris USA ("PM USA") appeals from a final judgment in favor of the plaintiff, Odaima Garcia ("Garcia"). We affirm.

This is an Engle-progeny case[1] that eventually resulted in a jury verdict against PM USA. The case was originally filed as a personal injury action by Juan Rodriguez ("Mr. Rodriguez" or "deceased"), now deceased. According to the trial testimony, Mr. Rodriguez began smoking when he moved to the United States from Cuba in 1967, and he exclusively smoked Marlboros until he quit. He was later diagnosed with COPD, lung cancer, and brain cancer.

Mr. Rodriguez filed suit against PM USA in 2007, alleging that he was a member of the Engle class. He brought claims against PM USA for negligence, strict liability, conspiracy, and fraud, and a claim for punitive damages. When Mr. Rodriguez died in 2008, Garcia, Mr. Rodriguez's daughter and the estate's personal representative, was substituted as plaintiff and the complaint was amended to state wrongful death and

---

[1] Engle-progeny cases arise out of a class action brought by a group of smokers, or their survivors, against major cigarette companies and two industry organizations for smoking-related injuries caused by an addiction to nicotine. See Engle v. Liggett Grp., Inc., 945 So. 2d 1246 (Fla. 2006).

survival claims for the deceased's wife, Elena Rodriguez ("Mrs. Rodriguez"). The case went to trial twice, in 2019 and in 2021.[2]

Prior to the 2019 and 2021 trials, and relevant to the current appeal, PM USA twice moved for summary judgment on Garcia's claims for Mr. Rodriguez's COPD based on the class limitation period set forth in Engle. PM USA argued that the claims related to COPD were time barred because Mr. Rodriguez allegedly developed smoking-related COPD before the Engle class period began. The timing of a COPD diagnosis is often a dispositive fact in Engle progeny cases: membership in the Engle class is limited to people who manifested smoking-related diseases between 1990 and 1996.[3]  PM USA asserted that it determined through Mrs. Rodriguez's deposition testimony and certain discovery that Mr. Rodriguez developed

---

[2] The 2019 trial resulted in a deadlocked jury.

[3] R.J. Reynolds Tobacco Co. v. Ciccone, 190 So. 3d 1028, 1042 (Fla. 2016) (Polson, J., dissenting) ("[T]o be in the *Engle* class and therefore get the benefit of the *Engle* class action jury's findings, a plaintiff's tobacco-related disease or condition must have manifested itself between the statute-of-limitations bar date of May 5, 1990, and the judicially imposed bar date of November 21, 1996."); see also Philip Morris USA, Inc. v. Russo, 175 So. 3d 681 (Fla. 2015); Fanali v. R.J. Reynolds Tobacco Co., 220 So. 3d 1209 (Fla. 4th DCA 2017); Frazier v. Philip Morris USA Inc., 89 So. 3d 937, 939 (Fla. 3d DCA 2012).

COPD as early as the 1980s, and knew at the time that it was smoking-related.[4]

Garcia responded, asserting that Mrs. Rodriguez was elderly at the time of her deposition, and that her memory of dates of events was diminished. Garcia submitted Mrs. Rodriguez's affidavit and an errata sheet to Mrs. Rodriguez's deposition stating that her testimony – that Mr. Rodriguez was diagnosed with COPD in the 1980s – was given in error. Instead, she indicated that Mr. Rodriguez's COPD manifested in the 1990s, around the time he left his employment with Suave shoes.

The trial court noted that the affidavit filed with Garcia's response to PM USA's motion for summary judgment did not contradict Mrs. Rodriguez's testimony. Rather, the affidavit cleared up the contradiction that was already in her testimony suggesting that Mr. Rodriguez was diagnosed with COPD in the early 1980s when he stopped working for Suave, where the record evidence showed that he worked for Suave until 1994. The court also noted that the "determinative factor" in Mrs.

---

[4] Ciccone, 190 So. 3d at 1041 (holding "that 'manifestation' for purposes of establishing membership in the Engle class is defined as the point at which the plaintiff began suffering from or experiencing symptoms of a tobacco-related disease or medical condition."). Further, "the plaintiff does not need to have been formally diagnosed or know that the symptoms were tobacco-related prior to the 'cut-off date' for class membership."). Id.

4

Rodriguez's mind was that Mr. Rodriguez was first experiencing breathing difficulties around the time he left Suave's employment. The trial court denied PM USA's motions for summary judgment.

The case proceeded to trial in 2021. The jury returned a verdict in favor of the plaintiff on her strict liability and negligence counts, found in favor of PM USA on the fraud and conspiracy claims, and awarded the plaintiff $10,000.00 for economic damages and $5.5 million for noneconomic damages. It apportioned 40% fault to Mr. Rodriguez and 60% to PM USA. The jury also found that punitive damages were warranted against PM USA. The trial court bifurcated the determination of the amount of punitive damages to Phase II of the trial, but the jury could not reach a unanimous verdict on the amount of punitive damages to be awarded against PM USA, resulting in a mistrial on that issue.

PM USA filed several post-verdict motions: Motion for Judgment in Accordance With Defendant's Motion for a Directed Verdict On Plaintiffs Claim for Punitive Damages; Defendant's Motion for Judgment in Accordance with Defendant's Motion for Directed Verdict On All Claims Made At The Close of Plaintiffs Case; Defendant's Renewed Motion Invoking Section 768.73(2), Florida Statutes; and Motion for Directed Verdict on All Claims Based on Statute of Limitations. Pertinent to this

5

appeal, PM USA's Motion for New Trial stated: "[T]o the extent the Court disagrees that PM USA is entitled to judgment in its favor for the reasons set forth in its post-trial motions to set aside the verdicts, PM USA incorporates all of the arguments in those motions as additional grounds for a new trial."

PM USA's motion for new trial included both phases of Garcia's strict liability and negligence claims (the two claims still at issue following the defense verdicts on fraud and conspiracy), arguing improper comments by Garcia and her attorneys deprived it of a fair trial, and that liability and punitive damages should be decided by a single jury. Alternatively, PM USA requested that all punitive damage issues should be retried, including entitlement to punitive damages, which was determined in Phase I.

After a hearing on all of PM USA's motions, the trial court issued an omnibus order which denied most of PM USA's motions, including the motion for judgment in accordance with its motion for a directed verdict on all of Garcia's claims based on the statute of limitations. The trial court granted, in part, PM USA's motion for new trial, ordering a new trial on all issues related to punitive damages, finding that the issues of entitlement and amount were interconnected and could not be separated. The trial court declined to retry the strict liability and negligence findings by the jury.

6

PM USA appealed from the trial court's omnibus order, Garcia cross-appealed, and this Court affirmed. <u>Philip Morris USA Inc. v. Garcia</u>, 352 So. 3d 404 (Fla. 3d DCA 2022). Following that decision, the trial court entered the December 17, 2022 final judgment, from which PM USA here appeals.

<u>Standards of Review</u>

The standard of review of a final summary judgment is de novo. <u>Najeera v. Tropical Supermarket Corp.</u>, 305 So. 3d 639, 639 (Fla. 3d DCA 2020) (citing <u>Markowitz v. Helen Homes of Kendall Corp.</u>, 826 So. 2d 256, 259 (Fla. 2002)).

To review the trial court's denial of a motion for directed verdict (and motion for judgment in accordance with an earlier motion for directed verdict), "[a]n appellate court must evaluate the evidence in the light most favorable to the non-moving party, drawing every reasonable inference flowing from the evidence in the nonmoving party's favor, and "[i]f there is conflicting evidence or if different reasonable inferences may be drawn from the evidence, then the issue is factual and should be submitted to the jury for resolution." <u>Miami-Dade Cnty. v. Guyton</u>, 48 Fla. L. Weekly D1500 (Fla. 3d DCA Aug. 2, 2023) (quoting <u>Miami-Dade Cnty. v. Eghbal</u>, 54 So. 3d 525, 526 (Fla. 3d DCA 2011)).  A directed verdict should only be

7

granted (or affirmed on appeal) "where no proper view of the evidence could sustain a verdict in favor of the nonmoving party." Id. (citations omitted).

Discussion

Garcia argues that the current appeal from the trial court's denial of PM USA's pretrial motion for summary judgment should be dismissed because PM USA has already appealed from the omnibus order that denied, among other post-trial motions, its motion for new trial based on the limitation period, and PM USA chose not to raise the limitations issue in that appeal. After this Court's affirmance, Garcia contends all that occurred in the trial court was the summary entry of final judgment on appeal here, and no new appellate issues were created. The entry of the final judgment, however, enables appellate review of the court's denial of PM USA's pre-trial motion for summary judgment. In the present case, our review of the record reflects the existence of genuine issues of material fact and the trial court was correct in denying PM USA's motions for summary judgment.

The trial court noted the conflicts in the evidence regarding the date of manifestation of Mr. Rodriguez's COPD contained in testimony of the family and doctors, and in medical documentation, and concluded these record contradictions provided sufficient disputed issues of material fact at

the summary judgment stage to preclude summary judgment. On de novo review of the record, we agree, and affirm the trial court's denial of PM USA's motion for summary judgment.

Addressing the trial court's denial of PM USA's motion for directed verdict, and its post-trial motion for judgment in accordance with its earlier motion for directed verdict, we evaluate the record evidence in the light most favorable to Garcia as the non-moving party, and "[i]f there is conflicting evidence or if different reasonable inferences may be drawn from the evidence, then the issue is factual and should be submitted to the jury for resolution." Miami-Dade Cnty. v. Eghbal, 54 So. 3d 525, 526 (Fla. 3d DCA 2011) (citations omitted); Medina v. Peralta, 802 So. 2d 376, 378 (Fla. 3d DCA 2001) ("A directed verdict is proper only when the record conclusively shows an absence of facts or inferences from facts to support a jury verdict, viewing the evidence in a light most favorable to the nonmoving party.") (quoting Blaustein v. Commodore Cruise Line, Ltd., 627 So. 2d 131 (Fla. 3d DCA 1993)).

The evidence admitted at trial, viewed in a light most favorable to Garcia, supported the jury's verdict. Because there was conflicting evidence surrounding the date of manifestation of Mr. Rodriguez's COPD, and different reasonable inferences could be drawn from the evidence, the

issue was factual and was properly submitted to the jury for resolution. Guyton, 48 Fla. L. Weekly D1500. We thus affirm the trial court's denial of PM USA's motion for directed verdict and motion for judgment in accordance with its earlier motion for directed verdict.

Further, PM USA's post-trial motion for new trial stated: "[T]o the extent the Court disagrees that PM USA is entitled to judgment in its favor for the reasons set forth in its post-trial motions to set aside the verdicts, PM USA incorporates all of the arguments in those motions as additional grounds for a new trial." (emphasis added). This included PM USA's motions and arguments made regarding the Engle limitation period. The trial court's subsequent omnibus order denied PM USA's motion for judgment in accordance with its motion for directed verdict on all of Garcia's claims based on the statute of limitation, and granted in part and denied in part PM USA's motion for new trial.

The Florida Supreme Court in Baptist Memorial Hospital, Inc. v. Bell, 384 So. 2d 145, 146 (Fla. 1980), explained the test applied to review of a grant or denial of a motion for new trial:

> In reviewing this type of discretionary act of the trial court, the appellate court should apply the reasonableness test to determine whether the trial judge abused his [or her] discretion. If reasonable [people] could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of

10

discretion . . . the ruling should not be disturbed in the absence of a clear showing that it has been abused, and there has been no such showing in the instant case.

(citing Cloud v. Fallis, 110 So. 2d 669, 673 (Fla. 1959)). See also Van v. Schmidt, 122 So. 3d 243, 258 (Fla. 2013) (holding "a reviewing court can determine the legal issue just as well as the trial court. However, the trial court's findings of fact and determinations of credibility are still entitled to the same deference as in orders that are not premised, at least in part, on an error of law, because of the trial court's superior vantage point of having been present during the entire trial."); Brown v. Est. of Stuckey, 749 So. 2d 490, 496 (Fla. 1999) (holding the "grant of a new trial is of such firmness that it should not be disturbed except upon a clear showing of abuse."). We conclude that the trial court did not abuse its discretion by denying PM USA's post-trial motions, including the Engle limitation issue, which was specifically subsumed in its motion for new trial.  Accordingly, we affirm.

Affirmed.